Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL III

| Miguel A. Ortiz González<br><br>**Recurrente**<br><br>Vs.<br><br>Autoridad de Carreteras y Transportación<br><br>**Recurrida** | TA2026RA00056 | *REVISIÓN ADMINISTRATIVA* procedente de la Autoridad de Carreteras y Transportación<br><br>Caso Núm. 2023 ACT 002<br><br>SOBRE:<br><br>Solicitud de Trato Igual en Concesión de Diferencial |
|---|---|---|

Panel integrado por su presidente, el Juez Hernández Sánchez, el Juez Rivera Torres y el Juez Marrero Guerrero.

**Hernández Sánchez, Juez Ponente**

### SENTENCIA [1]

En San Juan, Puerto Rico, a 27 de abril de 2026.

El 9 de febrero de 2026, el Sr. Miguel A. Ortiz González (señor Ortiz), la Sra. Magdalis Concepción Franco, y el Sr. Eric O. Díaz Febus (señor Díaz) (en conjunto, los recurrentes) comparecieron ante nos mediante una *Revisión Judicial* y solicitaron la revocación de una *Resolución Final* que se emitió y notificó el 8 de diciembre de 2025 por la Oficina de Apelaciones de la Autoridad de Carreteras y Transportación (Oficina de Apelaciones). Mediante el aludido dictamen, la Oficina de Apelaciones declaró No Ha Lugar la *Apelación* que presentó la parte recurrente el 15 de diciembre de 2023.

Por los fundamentos que expondremos a continuación, ***confirmamos*** el dictamen recurrido.

I.

El 15 de diciembre de 2023, los recurrentes presentaron una *Apelación* sobre solicitud de trato igual en concesión diferencial ante

---

[1] Se emite nuevamente la Sentencia a los únicos fines de corregir la fecha. Se deja sin efecto la Sentencia notificada anteriormente.

la Oficina de Apelaciones.[2] Alegaron que eran empleados gerenciales de la Autoridad de Carreteras y Transportación (ACT o la recurrida) adscritos a la Oficina de Prueba de Materiales, Laboratorio de Pruebas en Bayamón, donde ocupaban los puestos de Supervisor de Laboratorio y Supervisores Auxiliares de Laboratorio. Expresaron que, a principios del año 2022, advinieron en conocimiento de que a otros supervisores de dicha oficina se les concedieron aumentos salariales mediante diferenciales por condiciones extraordinarias de trabajo. Señalaron que la solicitud de dichos aumentos se realizó para todos los supervisores, pero que ellos no fueron considerados.

Indicaron que, tras realizar varios trámites administrativos ante la ACT solicitando trato igual, no recibieron atención a sus reclamos, por lo que el 16 de septiembre de 2022 presentaron apelación ante la Comisión Apelativa del Servicio Público (CASP). Expusieron que, posteriormente, la ACT planteó falta de jurisdicción, lo cual fue acogido por la CASP, que mediante *Resolución* de 5 de septiembre de 2023 desestimó el caso al concluir que la Junta de Apelaciones de la ACT era el foro competente.

Por otro lado, adujeron que, el 13 de octubre de 2023 solicitaron al Director Ejecutivo Auxiliar de Recursos Humanos información sobre el procedimiento y los criterios utilizados para conceder los aumentos, así como las razones para no considerarlos, y reiteraron su solicitud de trato igual, sin recibir respuesta. Asimismo, manifestaron que, el 17 de noviembre de 2023 presentaron carta de reconsideración al Director Ejecutivo, la cual tampoco fue contestada. Argumentaron que la negativa de atender y responder su reclamo era arbitraria y discriminatoria, y, por ende, solicitaron que se ordenara a la ACT concederles los diferenciales por condiciones extraordinarias de trabajo en igualdad de

---

[2] *Véase,* págs. 21-23 del apéndice del recurso, SUMAC TA.

condiciones y con efecto retroactivo a la fecha en que fueron concedidos a otros supervisores.

En respuesta, el 23 de febrero de 2024, la ACT presentó una *Contestación a Apelación*.[3] Admitió que los recurrentes eran empleados gerenciales de carrera de la ACT adscritos a la Oficina de Prueba de Materiales, Laboratorio de Pruebas de Bayamón, así como la alegación que disponía sus puestos. Además, reconoció que los recurrentes recurrieron ante la CASP y que presentaron las cartas mencionadas en la apelación, incluyendo la de 13 de octubre de 2023 y la de 17 de noviembre de 2023.

No obstante, negó las alegaciones relacionadas con la improcedencia en la concesión de los diferenciales por condiciones extraordinarias y sostuvo afirmativamente que para ser acreedor de dicho diferencial era necesario cumplir con lo dispuesto en la Sección 14.4 del Reglamento de Personal Núm. 8111, *infra.* Alegó que los diferenciales fueron concedidos únicamente a los empleados que cumplieron con los requisitos establecidos en dicha disposición reglamentaria. Asimismo, negó las alegaciones sobre el trámite ante la CASP en los términos expuestos por los recurrentes y afirmó que, luego de que la ACT presentara una Moción de Desestimación, la CASP se declaró sin jurisdicción. Finalmente, indicó que toda alegación no expresamente admitida debía entenderse negada en su totalidad.

Así las cosas, el 3 de abril de 2024, los recurrentes presentaron una *Moción Informativa* […] mediante la cual indicaron que le habían remitido un *Primer Interrogatorio Producción de Documentos y Requerimiento de Admisiones* a la recurrida.[4] El 7 de

---

[3] *Véase*, págs. 35-38 del apéndice del recurso, SUMAC TA.
[4] *Véase*, págs. 41 del apéndice del recurso, SUMAC TA.

mayo de 2024, la ACT presentó su *Contestación a Primer Interrogatorio y Producción de Documentos.*[5]

Posteriormente, el 21 de mayo de 2024, los recurrentes le remitieron una carta a la ACT en la cual señalaron que el 8 de mayo de 2024 solicitaron por correo electrónico ciertos documentos mencionados en la contestación al interrogatorio núm. 3, los cuales no fueron incluidos.[6] Además, indicaron que varias preguntas del interrogatorio (2-4, 7-11 y 15-17) no fueron contestadas. Sostuvieron que la información solicitada no era onerosa y era necesaria y pertinente para el trámite del caso, por lo que solicitaban que se proveyeran las contestaciones y documentos pendientes en un término de cinco (5) días. Finalmente, advirtieron que, de no recibir la información, acudirían ante la Junta de Apelaciones, ya que lo solicitado era esencial para su adecuada representación y obraba únicamente en poder de la ACT.

El 19 de junio de 2024, la ACT les cursó una carta a los recurrentes. En esta, se reafirmó en las contestaciones previamente ofrecidas a su Primer Interrogatorio, Producción de Documentos y Requerimiento de Admisiones. Particularmente, en cuanto a las preguntas 2 y 3, sostuvo que constituían una "expedición de pesca" y objetó por ser amplias, opresivas, onerosas y por requerir información privilegiada. Respecto a las preguntas 4 y 7 a la 9, alegó que la información solicitada era irrelevante e impertinente a la controversia y que pretendía obtener datos de personas que no eran parte del caso. Además, invocó el Art. 20 del Reglamento de Personal Núm. 8111, *infra*, sobre la confidencialidad de los expedientes individuales de empleados.

En relación con la pregunta 10, indicó que no se había contratado perito alguno y que las comunicaciones o memorandos

---

[5] *Véase*, págs. 45-47 del apéndice del recurso, SUMAC TA.
[6] *Véase*, pág. 49 del apéndice del recurso, SUMAC TA.

entre abogados estaban protegidos por privilegio. Asimismo, reiteró que la solicitud buscaba información de personas ajenas al caso y volvió a invocar la confidencialidad establecida en el Reglamento de Personal Núm. 8111, *infra.* Sobre las preguntas 11, 16 y 17, se reafirmó en sus contestaciones anteriores, señalando en cuanto a la 16 que la información surgía de la Contestación a la Apelación.

Posteriormente, las partes presentaron el *Informe Preliminar de Conferencia con Antelación a la Vista* y el 16 de agosto de 2024, se celebró la Conferencia con Antelación a la Vista.[7] De la *Minuta* de esta vista surge que, la ACT, sostuvo que la controversia del caso se limitaba a determinar si los recurrentes cumplían individualmente con los requisitos reglamentarios para ser acreedores del diferencial por condiciones extraordinarias.[8] Indicó que las transacciones de personal otorgadas a otros empleados no eran pertinentes ni relevantes para adjudicar el caso, y que la información contenida en los expedientes de personal era privada y confidencial conforme al Reglamento de Personal Núm. 8111 y a la Ley Núm. 47. Reiteró que los recurrentes debían probar, en su carácter individual, si cumplían con los requisitos establecidos.

Por su parte, los recurrentes expusieron que su teoría se fundamentaba en el principio de mérito y de igual paga por igual trabajo, alegando que eran acreedores a trato igual, al pago del diferencial o a un aumento salarial comparable al concedido a otros supervisores que realizaban funciones similares. Confirmaron que una de las alegaciones era que se concedieron diferenciales a otros supervisores, excepto a ellos.

La ACT afirmó que los recurrentes no cumplían con los requisitos para recibir el diferencial y que, de haberse concedido a otros supervisores, ello respondió a que estos realizaron labores en

---

[7] *Véase*, págs. 53-68 del apéndice del recurso, SUMAC TA.
[8] *Véase*, págs. 69-80 del apéndice del recurso, SUMAC TA.

el "field" y administraron proyectos fuera de los laboratorios. La Jueza Administrativa señaló como hecho material alegado que los recurrentes no realizaban ni supervisaban proyectos de construcción ni pruebas de laboratorio en el campo, a lo que la ACT respondió afirmativamente como una de las razones para denegar el diferencial.

En cuanto al descubrimiento de prueba, los recurrentes indicaron que varias preguntas del interrogatorio (2-4, 7-11 y 15-17) no fueron contestadas por la ACT por alegada falta de pertinencia o amplitud excesiva, lo que motivó comunicaciones entre las partes y la presentación de una moción solicitando la intervención del foro para ordenar respuestas completas. La Jueza Administrativa examinó las objeciones una por una. Respecto a la pregunta 2, ordenó detallar la información sobre las personas consultadas para contestar el interrogatorio. Sobre la pregunta 3, indicó que se produjeran los documentos utilizados o se indicara si no existían. La ACT sostuvo que los documentos utilizados ya fueron producidos y que la pregunta era amplia.

En relación con la pregunta 4, sobre solicitudes de aumentos de sueldo a supervisores, la ACT reiteró que la información era irrelevante, impertinente y confidencial, mientras que la parte recurrente sostuvo que era necesaria para cotejar el trato otorgado. La Jueza Administrativa expresó que el diferencial era una bonificación ligada a tareas específicas y que la controversia requería evaluar individualmente si los recurrentes tenían derecho al mismo, por lo que dicha evidencia no sería pertinente, aunque tomó conocimiento del planteamiento.

Respecto a las preguntas 7 a la 11, la ACT reiteró su falta de pertinencia e indicó que la información pertinente de los recurrentes constaría en sus expedientes personales. La Jueza Administrativa reiteró que la evaluación se centraría en los recurrentes y no en las

solicitudes de otros supervisores. Al discutirse la solicitud de documentos sobre trámites administrativos de aumentos concedidos a otros supervisores, la Jueza cuestionó su pertinencia, señalando que su análisis se limitaba a determinar si los recurrentes tenían derecho al diferencial.

Los recurrentes entendieron que la ACT había concedido aumentos a supervisores y administradores de proyectos y expresaron que no podían estipular un hecho propuesto debido a discrepancias sobre las funciones que realizaban. Finalmente, la ACT se comprometió a producir copia de los expedientes de personal de los recurrentes y atender cualquier información adicional que no constara en dichos expedientes.

Luego de varios trámites procesales, el 10 de febrero de 2025, se celebró la vista en su fondo.[9] Posteriormente, en cumplimiento con la orden de la Oficina de Apelación, las partes presentaron sus respectivos Memorandos de Derecho. Evaluadas las posturas de ambas partes y la prueba documental presentada, el 8 de diciembre de 2025, la Oficina de Apelaciones emitió y notificó una *Resolución Final.* En primer lugar, formuló las siguientes determinaciones de hechos:

1. Los Apelantes son empleados gerenciales de la Autoridad de Carreteras y Transportación (ACT), asignados a funciones de supervisión en la Oficina de Pruebas de Materiales, Laboratorio de Pruebas en Bayamón.

2. Los Apelantes ocupan los puestos según se describen a continuación:

   A. Miguel A. Ortiz González, Supervisor de Laboratorio de Prueba de Materiales, desde el año 2012.

   B. Magdalis Concepción Franco, Supervisora Auxiliar de Laboratorio, desde el año 2014.

   C. Eric O. Díaz Febus, Supervisor Auxiliar de Laboratorio, desde el año 2014.

---

[9] *Véase,* págs. 1399- 1403 del apéndice del recurso, SUMAC TA.

3. A principios del año 2022, los Apelantes advinieron en conocimiento de que, a otros supervisores adscritos a la Oficina de Prueba de Materiales, se les concedieron aumentos de salario mediante la concesión de diferenciales.

4. Luego de varios trámites administrativos en la ACT, el 16 de septiembre de 2022, los Apelantes recurrieron en Apelación a la Comisión Apelativa del Servicio Público (CASP), Caso Núm. 2022-09-0455.

5. Luego de varios trámites en la CASP, la ACT alegó falta de jurisdicción y solicitó que se desestimara la Apelación, lo que fue acogido por la CASP.

6. Mediante Resolución de 5 de septiembre de 2023, CASP desestimó el Caso Núm. 2022-09-0455 por falta de jurisdicción, por considerar que la Junta de Apelaciones de la ACT es el foro que tiene autoridad para atender la controversia que aquí se plantea.

7. El 13 de octubre de 2023, los Apelantes dirigieron una comunicación firmada por ellos al Sr. Ángel Padilla Muñoz, Director Ejecutivo Auxiliar de Recursos Humanos, en la cual solicitaron que se les informara el procedimiento y los criterios utilizados para conceder un alegado aumento de salario a todos los supervisores del Laboratorio de Bayamón. También le indicaron que les informara la razón, si alguna, por la cual no fueron considerados en igualdad de condiciones.

8. Los Apelantes no detallaron en su escrito una descripción y/o situación extraordinaria de trabajo ni justificación para recibir el pago de diferencial. Tampoco surge una evaluación de sus respectivos supervisores.

9. El Sr. Ángel Padilla Muñoz, Director Ejecutivo Auxiliar de Recursos Humanos de la ACT, no contestó dicha comunicación. Por lo tanto, el 17 de noviembre de 2023, los Apelantes entregaron una solicitud de reconsideración al Director Ejecutivo. (Anejo 1-B).

10. El 15 de diciembre de 2023, los Apelantes presentaron la Apelación de epígrafe ante esta Junta de Apelaciones de la ACT, hoy Oficina de Apelaciones.

11. El Laboratorio de Bayamón es auditado, posee una acreditación R18 y realiza pruebas de acero, asfalto y concreto, pruebas que los otros laboratorios no realizan. Se compone por del Director de Laboratorio, Supervisor de Laboratorio, Supervisor Auxiliar de Laboratorio, Supervisor de Sección y los Técnicos.

12. El. Sr. Miguel A. Ortiz González, desde el año 2012, se desempeñó como Supervisor de Laboratorio, actualmente llamado Supervisor de Análisis de Materiales Senior. Además, es químico licenciado y cuenta con certificaciones en suelo, agregado, asfalto y concreto. Entre sus deberes y funciones es responsable de supervisar análisis de materiales y laboratorios. En Mayagüez, tres (3) personas, Bayamón once (11) personas y en Ponce seis (6) personas. Realiza inspecciones, auditorías cada dos años, cuando ocurre alguna situación o cuando le es requerido, custodia información importante, atiende asuntos relacionados a los materiales en la contratación de los proyectos, por exigencias de agencias acreditadoras, investiga, consulta y aclara cómo se deberá realizar la prueba para asegurar cumplimiento, evalúa las necesidades de compra de equipos, trabaja con la calibración de ellos y sale al campo en calidad de peritaje en plantas de asfalto, pero es esporádico y por necesidad de servicio. Está encargado del control de calidad de los materiales y las certificaciones y acreditaciones para lograr la asignación de fondos federales y reembolsos.

13. La Sra. Magdalis Concepción Franco se desempeña como Supervisora Auxiliar de Laboratorio, en la Oficina de Prueba de Materiales, que pertenece al Laboratorio de Bayamón. Ella posee certificaciones de suelo, asfalto, concreto y agregado. Sus deberes principales son mantener el control del laboratorio, realizar reportes, coordinar reuniones para que los trabajos se lleven a cabo de manera uniforme, brindar instrucciones a los empleados, preparar un plan de trabajo, hacer muestras y contestar requerimientos, realiza informes, revisa reportes para los administradores de proyectos. Cuando se le requiere salir al campo, lo hace y toma las muestras y sustituye, en ocasiones, al Sr. Miguel A. Ortiz González cuando este está ausente. Ella supervisa a trece (13) personas, de las cuales diez (10) son empleados de la ACT y tres (3) son por contrato.

14. El Sr. Eric O. Díaz Febus, se desempeña como Supervisor Auxiliar de Laboratorio en el Laboratorio de la ACT desde el año 2014. Dentro de sus tareas principales se encuentra supervisar personal dos (2) personas, planificar, ordenar y coordinar el trabajo a los compañeros, realizar pruebas de laboratorio, atiende consultas de administradores de proyectos, botar las carretillas, brindar mantenimiento y reparación de equipo. Además, se prepara para inspecciones federales, prepara informes de control de calidad, es responsable del arqueo, de la caja menuda. Realiza salidas de campo para pruebas de polishing, verificar que no haya incongruencias con materiales. También ayuda a compañeros a verificar y organizar el almacén.

Tiene trece certificaciones que son tres (3) en sueldo, cuatro (4) en hormigón, tres (3) en asfalto y tres (3) en agregado.

15. El testigo de la parte Apelante, Sr. Leonardo Santiago, es Supervisor de Analista de Materiales y recibió un diferencial de $1,200.00 mensuales. Su puesto es distinto al de los Apelantes y el 95% de sus funciones requiere estar en el "field".

16. El testigo de la parte Apelante, Sr. Edgardo Medero Normandia, trabaja en la Oficina de Prueba Materiales. El desconoce sobre el pago de diferencial a algún supervisor y se refirió a la concesión de diferenciales como "rumores". No pudo especificar qué criterios se utilizaron, ni si los supervisores de analistas son administradores de proyecto.

17.  El testigo de la parte Apelante, Ing. Miguel A. Estrella Colón, quien para el 2022 fungía como Director de la Oficina de Prueba de Materiales, aunque actualmente se encuentra en destaque en el Departamento de Transportación y Obras Públicas, declaró que él no recomendó un pago de diferencial a los Apelantes y sí para los empleados de campo que trabajan en la noche y están expuestos a unos riesgos. Él hizo gestiones para que el salario de los supervisores de laboratorio, en general, fuera mejorando, pero hubo una limitación y no se concretó.

18. El Sr. Ángel Padilla Muñoz, Director Ejecutivo Auxiliar de Recursos Humanos de la ACT, declaró que con relación a los Apelantes y conforme al proceso, nunca se recibió una solicitud, por escrito, de los supervisores de los Apelantes redactando, en detalle, las funciones extraordinarias que no están dentro de su descripción de deberes del empleado. Tampoco se recibió una solicitud del pago de diferencial dirigida al Director Ejecutivo de la ACT. En adición, los Apelantes nunca expusieron su situación extraordinaria de trabajo ni justificación para recibir el pago de diferencial.

19. Los empleados a los cuales se les concedió un diferencial son Supervisores de la Oficina Prueba de Materiales y son los siguientes: Joaquín Flores, Leonardo Santiago, Carlos Hernández y Alexander García. Los Apelantes desconocen cuáles tareas extraordinarias hacen los empleados a los que le concedieron el diferencial, ya que tienen puestos y funciones distintas a la de los Apelantes.

Luego, conforme a estas determinaciones de hechos, la prueba documental estipulada, los testimonios de las partes y el derecho aplicable, declaró No Ha Lugar la *Apelación* presentada por los recurrentes. Particularmente, puntualizó que, según el Reglamento de Personal Núm. 8111, *infra,* la ACT podría conceder

el diferencial por condiciones extraordinarias únicamente cuando estuviese justificado, por lo que su otorgamiento no era automático y requería un análisis individual de cada caso. Expresó que, en el presente caso no se demostraron circunstancias excepcionales que justificaran el pago del diferencial a los recurrentes. Sostuvo que de la prueba presentada surgía que estos no cumplieron con los requisitos reglamentarios correspondientes ni se evidenció la realización de funciones extraordinarias en exceso conforme a la disposición aplicable. Indicó que tampoco constaba que sus supervisores hubiesen expuesto o justificado la procedencia del diferencial reclamado, ni que se hubiese recomendado al Director Ejecutivo de la ACT su concesión.

Además, señaló que el entonces Director de la Oficina de Prueba de Materiales no recomendó el pago del diferencial y que las comunicaciones de los recurrentes se limitaron a solicitar explicación sobre los criterios utilizados para conceder diferenciales a otros empleados y a reclamar su otorgamiento, sin demostrar justificación propia. A base de ello, determinó que los recurrentes no tenían derecho al diferencial salarial y que la ACT estaba impedida de concederlo por no existir solicitud formal ni demostración de cumplimiento con el Reglamento de Personal Núm. 8111, *infra.*

En desacuerdo con esta determinación, el 29 de diciembre de 2025, los recurrentes presentaron una solicitud de reconsideración. Allí sostuvieron que demostraron mediante la prueba testifical y documental que eran acreedores al pago del diferencial por realizar labores de similar o mayor complejidad que otros supervisores de la Oficina de Prueba de Materiales que sí lo recibieron. Señalaron que la Oficina de Apelaciones reconoció que varios supervisores fueron beneficiados con el diferencial, pero no evaluó en los méritos las razones por las cuales se concedió a algunos y no a ellos, ni atendió

adecuadamente el hecho de que funcionarios de la ACT desconocieran los criterios utilizados para otorgarlo.

Asimismo, argumentaron que la Oficina de Apelaciones erró al no autorizar el descubrimiento de prueba solicitado, particularmente en cuanto a información relacionada con la concesión del diferencial, nombres de los beneficiados, criterios utilizados y montos autorizados. Expusieron que la ACT se negó a contestar varias preguntas del interrogatorio y a producir documentos solicitados, manteniéndose en su postura pese a los requerimientos y a lo discutido en la conferencia con antelación a la vista. Alegaron que dicha información era pertinente, no onerosa y estaba disponible para la ACT, y que su negativa constituyó una actuación arbitraria y en violación al debido proceso de ley.

Invocaron la doctrina sobre el carácter amplio y liberal del descubrimiento de prueba, las garantías del debido proceso en la adjudicación administrativa formal y la presunción establecida en la Regla 304(5) de Evidencia respecto a evidencia voluntariamente suprimida. En consecuencia, solicitaron que se dejara sin efecto la *Resolución Final,* se declarara con lugar la reconsideración, se determinara que la ACT no descubrió prueba pertinente según requerido, y que se ordenara concederles el diferencial en igualdad de condiciones y con efecto retroactivo, junto con cualquier otro remedio que en derecho proceda.

Atendida la solicitud de reconsideración, el 8 de enero de 2026, la Oficina de Apelaciones emitió una *Resolución* que se notificó 10 de enero de 2026 declarándola No Ha Lugar. Aún inconforme, el 9 de febrero de 2026, los recurrentes presentaron el recurso de epígrafe y formularon los siguientes señalamientos de error:

**ERRÓ LA HONORABLE JUNTA DE APELACIONES AL DETERMINAR QUE LOS APELANTES NO AMERITAN EL PAGO DE DIFERENCIAL POR NO HABER DEMOSTRADO QUE REALIZAN LABORES EXTRAORDINARIAS Y NO**

**SER ACREEDORES A IGUAL PAGA POR IGUAL TRABAJO EN VIOLACIÓN AL PRINCIPIO DE MÉRITO.**

**ERRÓ LA HONORABLE JUNTA DE APELACIONES AL DETERMINAR QUE NO PROCEDÍA QUE LA ACT PRODUJERA INFORMACIÓN REQURIDA Y PERTINENTE A LA CONTROVERSIA DURANTE LA ETAPA DE DESCUBRIMIENTO DE PRUEBA EN VIOLACIÓN AL DEBIDO PROCESO DE LEY.**

Atendido el recurso, emitimos una *Resolución* concediéndole a las partes un término para presentar una copia de la transcripción de la prueba oral estipulada de la vista adjudicativa celebrada el 22 de enero de 2025. En cumplimiento con nuestra orden, las partes presentaron la transcripción de la prueba oral estipulada.

Por otro lado, emitimos una *Resolución* concediéndole a la ACT hasta el 13 de abril de 2026 para presentar su posición en cuanto al recurso. A su vez, le concedimos a los recurrentes hasta la misma fecha para presentar su alegato suplementario. Oportunamente, la recurrida presentó su *Alegato en Oposición de la Parte Recurrida* y negó que la Oficina de Apelaciones cometiera los errores que los recurrentes le imputaron.

Asimismo, la parte recurrente presentó su alegato suplementario y una moción informativa expresando que no se había incluido el testimonio del Sr. Edgardo Medero Normandía (señor Medero) como parte de la prueba estipulada. Ante ello, le concedimos un término a las partes para que presentaran dicho testimonio y lo estipularan. En cumplimiento con nuestra orden, las partes presentaron una exposición narrativa estipulada del señor Medero.

Con el beneficio de la comparecencia de ambas partes, procedemos a resolver el asunto ante nos. *Veamos.*

II.

**-A-**

La doctrina de revisión judicial nos encomienda "examinar si las decisiones de las agencias administrativas fueron hechas dentro

de los poderes delegados y son compatibles con la política pública que las origina". *Rolón Martínez v. Supte. Policía,* 201 DPR 26, 35 (2018). Al efectuar tal encomienda, debemos "otorgar amplia deferencia a las decisiones de las agencias administrativas". *Vázquez v. Consejo de Titulares,* 2025 TSPR 56, 215 DPR ___ (2025).

La normativa jurisprudencial ha reiterado que existe en el derecho puertorriqueño una presunción de legalidad y corrección a favor de los procedimientos y decisiones realizadas por las agencias administrativas. *Rolón Martínez v. Supte. Policía, supra,* pág. 35. Lo anterior responde a la experiencia y pericia que se presume tienen dichos organismos para atender y resolver los asuntos que le han sido delegados. *Vázquez v. Consejo de Titulares,* supra.

Así, el estado de derecho vigente nos impone otorgarle deferencia a la agencia administrativa, siempre que la parte que la impugne no demuestre evidencia suficiente que rebata la presunción de legalidad y corrección. *Katiria's Café, Inc. v. Municipio Autónomo de San Juan,* 2025 TSPR 33, 215 DPR ___ (2025). Por lo tanto, al realizar nuestra función revisora debemos enfocarnos en determinar si la agencia administrativa: (1) erró en aplicar la ley; (2) actuó arbitraria, irrazonable o ilegalmente; y (3) si lesionó derechos constitucionales fundamentales. *Torres Rivera v. Policía de PR,* 196 DPR 606, 627-628 (2016).

De este modo, si al realizar nuestra función revisora no nos encontramos ante alguna de las situaciones previamente mencionadas, tenemos el deber de validar la determinación realizada por la agencia administrativa. Íd. Ello, aun cuando exista más de una interpretación posible en cuanto a los hechos. Íd., pág. 627. Ahora bien, es preciso recordar que las conclusiones de derecho, por el contrario, serán revisables en todos sus aspectos. Sección 4.5 de la Ley Núm. 38-2017, según enmendada, mejor

conocida como *Ley de Procedimiento Administrativa Uniforme del Gobierno de Puerto Rico* (LPAUG), 3 LPRA sec. 9675.

**-B-**

El Reglamento de Personal Núm. 8111 de la ACT se adoptó con el propósito de establecer las normas necesarias para un sistema de recursos humanos uniforme y objetivo, que garantice el principio de mérito a los empleados de carrera gerenciales y a los empleados de carrera de unidades apropiadas en asuntos no sujetos a negociación colectiva, con el fin de promover un servicio público de excelencia. Art. 1 del Reglamento de Personal Núm. 8111.

En lo pertinente a la controversia ante nuestra consideración, el Art. 14 del referido Reglamento de Personal Núm. 8111, regula de forma específica lo relativo al sistema de retribución aplicable a los empleados cubiertos, estableciendo las normas, criterios y parámetros que rigen la compensación y los pagos correspondientes dentro de la agencia. En particular, dicho artículo dispone lo siguiente:

> El Director Ejecutivo someterá para la aprobación del Secretario antes de su implantación, un Plan de Retribución en el que se considerará, entre otros, los factores de complejidad de funciones, grado de responsabilidad y discreción, requisitos de preparación y experiencia, grado de dificultad en el reclutamiento y la retención de empleos, condiciones de trabajo, sueldos y beneficios marginales prevalecientes, indicaciones sobre el costo de vida y posibilidades fiscales.
>
> La administración del Plan de Retribución será asignada al Área de Recursos Humanos. Las disposiciones incluidas en este Artículo regirán la aplicación de las escalas de sueldos a las condiciones de personal.
>
> **Sección 14.1 - Estructura del Plan de Retribución**
>
> El Director Ejecutivo aprobará un Plan de Retribución Uniforme, a los fines de que la retribución de los empleados guarde justa proporción con sus servicios. El plan incluirá lo siguiente:
>
> 1. La estructura de todas las escalas de retribución que se estimen necesarias, conteniendo cada escala un tipo mínimo, pasos intermedios, y un tipo máximo de retribución. Los tipos dentro de la escala se

utilizarán para conceder aumentos de sueldos en reconocimiento a la productividad, años de servicio, dificultad de reclutamiento, retención de personal y otros elementos de eficiencia de los empleados.

2. Habrá tantas escalas como sean necesarias para establecer diferencias en los tipos básicos de retribución, de manera que se reflejen diferencias entre unas clases y otras. Aquellas funciones de complejidad igual o similar para cuyo desempeño se exija de los empleados requisitos equivalentes, serán asignadas a la misma escala de retribución.

3. Una lista de asignaciones de clases a las escalas de retribución correspondientes.

4. Las reglas necesarias para la implantación, operación y mantenimiento del Plan de Retribución.

5. Conforme la disponibilidad de los recursos fiscales, la estructura de sueldos deberá ser lo suficientemente competitiva, que permita reclutar y retener recursos humanos capacitados; proveer para el justo reconocimiento de la eficiencia y productividad de los empleados, y estar desarrollada de forma tal que provea oportunidades de progreso en la Autoridad.

6. Las escalas de sueldos representarán el valor monetario que tienen las diferentes clases de puestos en el Plan de Clasificación de Puestos del Servicio de Carrera y servirán para fijar la retribución directa de cada empleado de la Autoridad. Al asignar y reasignar las clases de puestos, deberá mantenerse la correlación entre el nivel de las clases y las escalas a las cuales éstas se asignan.

**Sección 14.2 - Bases para Determinar y Establecer las Escalas de Retribución.**

A los fines de aplicar con equidad las escalas de retribución, al establecerlas y modificarlas se tomarán en consideración a los siguientes criterios:

1. Los requisitos mínimos para ocupar los puestos tales como preparación académica, experiencia, conocimientos, habilidades, destrezas y licencias requeridas por ley para ejercer o practicar determinadas profesiones y oficios, deberán estar de acuerdo con las Especificaciones de Clases para cada puesto consignado en el Plan de Clasificación y en las normas de reclutamiento.

2. Las condiciones de trabajo, los riesgos ocupacionales, y las condiciones físicas necesarias para desempeñar el puesto.

3. Los niveles de complejidad, responsabilidad, dificultad y autoridad de las clases de puestos; el grado de discreción que se requiere en el desempeño

de los deberes y responsabilidades, grado de dificultad en el reclutamiento de candidatos idóneos; oportunidades de ascenso; condiciones de trabajo; costo de vida, y posibilidades fiscales.

4. La experiencia obtenida en el reclutamiento y retención de personal para determinados puestos.

5. Las tendencias de retribución en los mercados de empleo comparables con los puestos de la Autoridad.

6. Los beneficios marginales que ofrezca la Autoridad en comparación con los que se ofrecen en el mercado de empleo.

7. La legislación local o decretos mandatorios del Departamento del Trabajo y Recursos Humanos de Puerto Rico o el gobierno federal sobre salarios aplicables a los puestos de la Autoridad.

8. Los recursos económicos de la Autoridad.

[…]

### Sección 14.4- Ajustes en la Retribución

Las siguientes disposiciones regirán la aplicación de las escalas de sueldos:

[…]

10. Otros Métodos de Compensación:

a. La Autoridad podrá desarrollar e implantar otros métodos de compensación conforme a su capacidad presupuestaria para reconocer la productividad, eficacia y calidad de los trabajos que realizan los empleados. Estos métodos de compensación podrán utilizarse para retener el recurso humano idóneo y atraer recurso humano cualificado para ocupar puestos de difícil reclutamiento. Éstos no tendrán el efecto de alterar las estructuras salariales que estén vigentes. Los mismos podrán adoptarse siempre y cuando sean funcionales y se consideren beneficiosos para la Autoridad.

Algunos de estos métodos son:

1) Diferenciales- Sólo se podrán conceder por las siguientes condiciones:

a) Condiciones extraordinarias de trabajo - situación de trabajo temporera que requiere un mayor esfuerzo o riesgo para el empleado, mientras desempeña las funciones de su puesto. La cuantía de los diferenciales por

condiciones extraordinarias de trabajo equivaldrá a la progresión de los tipos retributivos de la escala correspondiente a la clase de puesto que ocupa el empleado y podrá ser por el equivalente hasta de tres (3) pasos. Como norma general, la cuantía máxima del diferencial a conceder será por el equivalente a la amplitud de la escala. En todo caso, la situación extraordinaria de trabajo deberá estar debidamente expuesta y justificada y será responsabilidad del supervisor y del empleado informar a la Autoridad cuando cesan las condiciones extraordinarias del trabajo.

**-C-**

El descubrimiento de prueba constituye un mecanismo procesal esencial dirigido a garantizar que las partes puedan obtener hechos, títulos, documentos u otra información que obre en poder de la parte contraria o que sea de su exclusivo conocimiento, y que resulte necesaria para hacer valer sus derechos. *McNeil Healthcare v. Mun. Las Piedras II*, 206 DPR 659, 672 (2021). Su propósito es precisar las controversias, facilitar la obtención de evidencia, evitar sorpresas en la etapa adjudicativa y preservar prueba pertinente para la correcta resolución del caso. *García Rivera et al. v. Enríquez*, 153 DPR 323, 333 (2001).

Desde *Sierra v. Tribunal Superior*, 81 DPR 554, 560 (1959), el Tribunal Supremo ha reconocido el valor y la necesidad de que el descubrimiento de prueba sea amplio y liberal. No obstante, aunque su alcance es expansivo, el foro adjudicativo conserva amplia discreción para regularlo, de modo que se armonice el interés de un descubrimiento efectivo con la solución justa, rápida y económica de las controversias. *Rivera et al. v. Arcos Dorados et al.*, 212 DPR 194, 203 (2023). Estos principios, aunque desarrollados en el ámbito judicial, sirven como guía persuasiva en los procedimientos adjudicativos administrativos, donde también rige el deber de

garantizar una oportunidad real de acceso a evidencia pertinente como componente del debido proceso de ley.

En ese contexto, la Regla 23.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 23.1, dispone que las partes pueden hacer descubrimiento sobre cualquier materia no privilegiada que sea pertinente al asunto en controversia, aun cuando la información solicitada no sea necesariamente admisible en el juicio, siempre que exista una probabilidad razonable de que conduzca al descubrimiento de evidencia admisible. El Tribunal Supremo ha reiterado que la pertinencia en la etapa de descubrimiento de prueba se interpreta de forma liberal y comprende toda información que pueda guardar relación con la materia objeto del litigio o que pueda razonablemente conducir a evidencia admisible. *Ponce Adv. Med. v. Santiago González et al.*, 197 DPR 891, 898-899 (2017). Asimismo, se ha reconocido que constituye prueba pertinente aquella que pueda facilitar el desarrollo del proceso, delimitar las controversias en litigio, servir para impugnar credibilidad o identificar testigos y fuentes de información. *McNeil Healthcare v. Mun. de Las Piedras II*, supra, pág. 674.

Más aún, nuestro más alto foro ha destacado la gran flexibilidad que caracteriza la etapa de descubrimiento de prueba y la amplia discreción que tienen los foros adjudicativos para regularla, siempre que ejerzan un balance razonable entre la economía procesal y el derecho de las partes a un descubrimiento amplio. *Rivera et al. v. Arcos Dorados et al.*, supra, pág. 213. En particular, se ha enfatizado que el derecho a presentar prueba en apoyo de una reclamación constituye un eje central del debido proceso de ley, por lo que su limitación solo debe ocurrir en circunstancias excepcionales. Íd., págs. 206-207.

En el ámbito administrativo, el debido proceso de ley —consagrado en la Sec. 7 del Art. II de la Constitución de Puerto Rico

y en las Enmiendas V y XIV de la Constitución federal— exige que toda interferencia con intereses de libertad o propiedad se realice mediante un procedimiento justo y equitativo. Aunque estas garantías se aplican con mayor flexibilidad que en el ámbito judicial, las agencias administrativas no pueden actuar de forma arbitraria al punto de impedir a una parte la oportunidad real de presentar evidencia pertinente. *Almonte et al. v. Brito*, 156 DPR 475, 480-481 (2002).

Cónsono con ello, la Sección 3.1 de la LPAU, 3 LPRA sec. 9641, reconoce como garantías mínimas en los procedimientos adjudicativos administrativos el derecho a notificación oportuna, a presentar evidencia, a una adjudicación imparcial y a que la decisión se base en el expediente. De igual forma, se ha reconocido que el debido proceso en vistas administrativas incluye la oportunidad de examinar la evidencia presentada y contrainterrogar testigos. *Hernández v. Secretario*, 164 DPR 390, 395-396 (2005). Por consiguiente, la negativa injustificada a producir información pertinente durante la etapa de descubrimiento puede constituir una limitación indebida al derecho a presentar prueba y, en consecuencia, una violación al debido proceso de ley.

Ahora bien, este derecho a un descubrimiento amplio no es absoluto y debe armonizarse con otros intereses legítimos reconocidos por nuestro ordenamiento. En particular, el Art. 20(4)(b) del Reglamento Núm. 8111, *supra*, dispone que los expedientes individuales de los empleados de la ACT tienen carácter confidencial y solo podrán ser examinados para fines oficiales o cuando medie autorización escrita del propio empleado, o por orden de un tribunal de justicia. Asimismo, establece que su contenido únicamente podrá ser divulgado a terceros mediante autorización expresa del empleado o por mandato judicial, imponiendo a los custodios de dichos expedientes el deber de salvaguardar su confidencialidad. *Íd.*

En ese sentido, cuando en un procedimiento adjudicativo se solicite acceso a este tipo de información, el foro administrativo viene llamado a realizar un balance cuidadoso entre el derecho de la parte a obtener evidencia pertinente y el interés en proteger la confidencialidad de los expedientes.

III.

De entrada, cabe precisar que, al ejercer nuestra función revisora, debemos recordar que las decisiones de las agencias administrativas gozan de una presunción de legalidad y corrección, por lo que corresponde a la parte que las impugna demostrar que la agencia actuó fuera de los poderes delegados, erró en la aplicación del derecho, incurrió en arbitrariedad o lesionó derechos constitucionales fundamentales. *Rolón Martínez v. Supte. Policía*, supra, pág. 35; *Katiria's Café, Inc. v. Municipio Autónomo de San Juan*, supra. De este modo, si al realizar nuestra función revisora no nos encontramos ante alguna de las situaciones previamente mencionadas, tenemos el deber de validar la determinación realizada por la agencia administrativa. *Torres Rivera v. Policía de PR*, supra, págs. 627-628.

A la luz de este marco normativo, procedemos a atender los señalamientos de error planteados por los recurrentes. En su primer señalamiento de error, los recurrentes sostuvieron que la Junta de Apelaciones erró al determinar que no eran acreedores al pago de diferencial por condiciones extraordinarias de trabajo, al concluir que no acreditaron la realización de labores extraordinarias ni el derecho a igual paga por igual trabajo, en alegada violación al principio de mérito. No les asiste la razón.

El Reglamento de Personal Núm. 8111 de la ACT establece un sistema retributivo estructurado, dirigido a garantizar que la compensación de los empleados responda a criterios objetivos y al principio de mérito. Particularmente, la Sección 14.4 (10)(1)(a)

dispone que los diferenciales por condiciones extraordinarias de trabajo solo podrán concederse cuando exista una situación temporera que requiera un mayor esfuerzo o riesgo, la cual debe estar debidamente expuesta y justificada. Asimismo, su otorgamiento está sujeto a un procedimiento formal que requiere la recomendación del supervisor, el endoso del director de área, la evaluación de Recursos Humanos y la aprobación final del Director Ejecutivo.

Contrario a lo alegado por los recurrentes, la evidencia sustancial que obra en el expediente administrativo sostiene la determinación de la Junta de Apelaciones de que estos no cumplieron con los requisitos reglamentarios para ser acreedores al diferencial reclamado. Surge de forma clara que no se presentó una solicitud formal de diferencial conforme al procedimiento establecido. El testimonio del Sr. Ángel José Padilla Muñoz, entonces Director Ejecutivo Auxiliar de Recursos Humanos, fue categórico al indicar que no recibió solicitud alguna de diferencial para los recurrentes.[10] Este explicó que el proceso requiere la presentación de un documento escrito, preparado y endosado por el supervisor inmediato y el director de área, el cual es luego evaluado por Recursos Humanos antes de someterse a la aprobación del Director Ejecutivo.[11] Dicho requisito no fue cumplido en el presente caso.

En esa misma línea, del propio expediente surge que las comunicaciones remitidas por los recurrentes al Sr. Ángel Padilla Muñoz y al Director Ejecutivo, Dr. Edwin E. González Montalvo, no constituyen una solicitud formal de diferencial en los términos requeridos por el Reglamento Núm. 8111, *supra.* En ambas cartas,

---

[10] *Véase*, pág.284, líneas 11-21 y pág. 285, líneas 4-12 de la transcripción de la prueba oral.
[11] *Véase*, pág. 261, líneas 19-25, pág. 262, líneas 1-7, y pág. 322, líneas 15-18 de la transcripción de la prueba oral.

los recurrentes se limitaron a solicitar información sobre el procedimiento y los criterios utilizados para conceder diferenciales a otros empleados, así como a reclamar "trato igual" en su otorgamiento. Sin embargo, no incluyeron una exposición detallada de las alegadas condiciones extraordinarias de trabajo que justificaran el pago del diferencial, ni acompañaron dichas comunicaciones de una recomendación o endoso de sus supervisores o directores de área.

Por el contrario, el contenido de dichas cartas refleja que el reclamo de los recurrentes estaba dirigido a cuestionar el trato otorgado a otros empleados, más que a cumplir con el proceso reglamentario requerido para la concesión del diferencial. Así, tales comunicaciones no satisfacen los requisitos de la Sección 14.4 del Reglamento Núm. 8111, *supra*, la cual exige que la situación extraordinaria de trabajo sea debidamente expuesta y justificada como condición previa para la evaluación de este tipo de compensación.

Esta deficiencia procesal fue corroborada por la propia prueba de los recurrentes. En su testimonio, el señor Ortiz admitió que en la comunicación sometida no se detallaron las alegadas tareas extraordinarias y que la misma no estaba firmada por ningún supervisor ni director.[12] A ello se suma que, durante el contrainterrogatorio, el señor Díaz igualmente reconoció que en los documentos remitidos tanto al Director Ejecutivo como al Director de Recursos Humanos no se detallaron las supuestas condiciones extraordinarias de trabajo que alegaban realizar.[13] Tales admisiones evidencian un incumplimiento directo con los requisitos del

---

[12] *Véase*, pág. 76, líneas 5-12 de la transcripción de la prueba oral.
[13] *Véase*, pág. 162, líneas 20-25 y pág. 163, línea 1 de la transcripción de la prueba oral.

Reglamento Núm. 8111, *supra,* y, por sí solas, sostienen la determinación recurrida.

A mayor abundamiento, aun tomando como ciertas las expresiones vertidas por los propios recurrentes durante el juicio, estas resultan insuficientes para establecer que realizaban labores bajo condiciones extraordinarias conforme a lo requerido por la Sección 14.4 del Reglamento Núm. 8111, *supra.* En el contrainterrogatorio, la Sra. Magdalis Concepción Franco identificó como tarea extraordinaria el "quality control" relacionado con procesos de acreditación de la agencia, lo cual, lejos de evidenciar una función excepcional, forma parte inherente de las responsabilidades ordinarias dentro de su área de trabajo.[14] Por su parte, el señor Ortiz fundamentó su alegada elegibilidad en consideraciones de equidad, señalando que realizaba labores relacionados con proyectos de infraestructura y que, en ocasiones, acudía al campo. No obstante, admitió que no podía precisar diferencias concretas que justificaran el diferencial reclamado, limitándose a expresar que desconocía las razones por las cuales los otros empleados lo recibían.[15] De igual forma, el señor Díaz limitó su reclamo a solicitar "igual trato" basado en la calidad y relevancia de su trabajo.[16]

Tales planteamientos, centrados en apreciaciones subjetivas de justicia retributiva y en la importancia general de sus funciones, no satisfacen el criterio reglamentario que exige la demostración específica de condiciones temporeras que impliquen un mayor esfuerzo o riesgo fuera del ámbito ordinario de sus deberes. En consecuencia, dichos testimonios no solo resultan insuficientes, sino que refuerzan la corrección de la determinación recurrida.

---

[14] *Véase,* pág.60, línea 25 y pág. 61, líneas 1-3 de la transcripción de la prueba oral.

[15] *Véase,* pág.126, líneas 18-25 y pág. 127, líneas 1-12 de la transcripción de la prueba oral.

[16] *Véase,* pág. 155, líneas 12-19 de la transcripción de la prueba oral.

De igual forma, el testimonio del Ing. Miguel A. Estrella Colón, entonces Director de la Oficina de Pruebas de Materiales, confirmó que no se recomendó el pago de diferencial para los recurrentes.[17] Aunque hizo referencia a una recomendación general, aclaró que esta no constituía una solicitud específica para ellos y que, en todo caso, el diferencial estaba dirigido principalmente a personal de campo, sujeto además a limitaciones presupuestarias.[18] A tono con lo anterior, el propio Ing. Miguel A. Estrella Colón estableció una distinción esencial entre los empleados que recibieron el diferencial y los recurrentes, al señalar que los primeros estaban expuestos a riesgos inherentes al trabajo de campo, particularmente en proyectos y labores en la vía pública, mientras que los recurrentes desempeñaban sus funciones en un entorno controlado, sin esa exposición directa al riesgo.[19] Este elemento resulta medular, ya que el Reglamento Núm. 8111, *supra*, condiciona la concesión del diferencial a la existencia de circunstancias que impliquen un mayor esfuerzo o riesgo. En consecuencia, la ausencia de dicha exposición en el caso de los recurrentes refuerza que no cumplían con los criterios necesarios para ser acreedores al beneficio solicitado.

En ese contexto, el expediente administrativo no contiene prueba suficiente que derrote la determinación de la Oficina de Apelaciones ni que establezca que los recurrentes cumplieron con los requisitos reglamentarios para la concesión del beneficio solicitado. Por el contrario, la determinación impugnada se sostiene en la ausencia de una solicitud formal y en el incumplimiento de los criterios establecidos en el Reglamento Núm. 8111, *supra.* En consecuencia, la determinación de la Junta de Apelaciones de declarar No Ha Lugar la apelación presentada por los recurrentes

---

[17] *Véase*, pág. 222, líneas 14-22 de la transcripción de la prueba oral.
[18] *Véase*, pág. 191, líneas 14-21 de la transcripción de la prueba oral.
[19] *Véase*, pág. 228, líneas 16-23 de la transcripción de la prueba oral.

está plenamente respaldada por evidencia sustancial y no refleja arbitrariedad ni error de derecho. Dicho esto, el primer señalamiento de error no se cometió.

Por otro lado, en su segundo señalamiento de error, los recurrentes alegaron que la Junta de Apelaciones erró al no ordenar la producción de información solicitada durante la etapa de descubrimiento de prueba, en violación al debido proceso de ley. Tampoco les asiste la razón.

El descubrimiento de prueba constituye un mecanismo procesal esencial dirigido a garantizar que las partes puedan obtener información pertinente para hacer valer sus derechos. *McNeil Healthcare v. Mun. Las Piedras II,* supra, pág. 672. No obstante, aunque su alcance es amplio y liberal, no es irrestricto. *Rivera et al. v. Arcos Dorados et al.*, supra, pág. 203. Los foros adjudicativos gozan de amplia discreción para limitarlo a materia no privilegiada que sea pertinente a la controversia, en aras de armonizar el descubrimiento efectivo con la solución justa, rápida y económica de los casos. Íd. En el ámbito administrativo, dichas normas se aplican con flexibilidad, pero siempre garantizando a las partes una oportunidad real de presentar evidencia como componente del debido proceso de ley. *Almonte et al. v. Brito,* supra, págs. 480-481. Ahora bien, este derecho debe balancearse con otros intereses legítimos, incluyendo la confidencialidad de cierta información.

En el presente caso, la controversia central consistía en determinar si los recurrentes, en su carácter individual, cumplían con los requisitos reglamentarios para ser acreedores al diferencial por condiciones extraordinarias de trabajo. Por consiguiente, la pertinencia del descubrimiento debía evaluarse a la luz de ese asunto específico. A pesar de ello, los recurrentes solicitaron información relacionada con otros empleados, incluyendo expedientes de personal y transacciones de aumentos salariales, con

el propósito de establecer un alegado trato desigual. Sin embargo, como correctamente concluyó la Junta de Apelaciones, dicha información no resultaba pertinente para adjudicar si los recurrentes cumplían con los requisitos del Reglamento Núm. 8111, *supra*, los cuales requieren un análisis individualizado de cada caso.

Más aún, la información solicitada está protegida por normas de confidencialidad. El Art. 20(4)(b) del Reglamento Núm. 8111, *supra*, dispone que los expedientes individuales de los empleados tienen carácter confidencial y solo pueden ser divulgados mediante autorización expresa del empleado o por orden de un tribunal. Por tanto, la negativa de la ACT a producir dicha información no fue arbitraria, sino cónsona con su deber reglamentario de salvaguardar la confidencialidad de los expedientes de personal.

En ese sentido, la Junta de Apelaciones actuó correctamente al balancear el derecho de los recurrentes a obtener evidencia con el interés en proteger información confidencial, concluyendo que la información solicitada no era pertinente a la controversia principal y, además, estaba protegida por normas de confidencialidad. Cabe destacar que los recurrentes tuvieron oportunidad plena de presentar evidencia en apoyo de su reclamación, por lo que no se configuró una violación al debido proceso de ley. En consecuencia, tampoco procede este señalamiento de error.

Por los fundamentos antes expuestos, concluimos que los recurrentes no lograron rebatir la presunción de corrección que cobija la determinación de la Junta de Apelaciones. La evidencia sustancial que obra en el expediente administrativo sostiene la conclusión de que estos no cumplieron con los requisitos reglamentarios para ser acreedores al diferencial por condiciones extraordinarias de trabajo. Asimismo, no se configuró una violación al debido proceso de ley en la conducción del descubrimiento de prueba, toda vez que las limitaciones impuestas respondieron a un

ejercicio válido de la discreción adjudicativa y a la protección de intereses legítimos de confidencialidad. En ausencia de arbitrariedad, error de derecho o lesión a derechos constitucionales, procede confirmar la Resolución recurrida en todos sus extremos.

IV.

Por los fundamentos antes expuestos, ***confirmamos*** el dictamen recurrido.

Notifíquese.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.


                              Lcda.  Lilia M. Oquendo Solís
                         Secretaria del Tribunal de Apelaciones